UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Tennelle Dulinski,<br><br>    Plaintiff,<br><br>v.<br><br>North Homes, Inc. (d/b/a "North Homes Children and Family Services"),<br><br>    Defendant. | Court File No. CV-20-2207<br><br>**COMPLAINT** |

Tennelle Dulinski ("Plaintiff"), for her Complaint against Defendant, North Homes, Inc. ("North Homes"), states and alleges as follows:

1. Plaintiff is an adult resident of Minnesota, a former employee of North Homes, and a person living with a disability.

2. North Homes is a Minnesota corporation based in Grand Rapids that provides therapeutic services to children with developmental, emotional and cognitive disabilities. At all times relevant, North Homes employed at least 50 individuals within Minnesota.

**NATURE OF ACTION**

3. By this action, Plaintiff seeks to hold North Homes accountable for unlawful acts of retaliation, interference, coercion and intimidation; for unlawful acts of disability discrimination, including Defendant's failure to reasonably accommodate her disability; for North Homes' unlawful denial of her medical-leave and related reinstatement rights; and for its discrimination and retaliation against her for asserting her statutory

1

right to medical leave. Plaintiff asserts claims under Title I of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et. seq.*, as amended by the ADA Amendments Act of 2008 ("ADA"), and under the Family Medical Leave Act, 29 U.S.C. § 2601 *et seq.* ("FMLA"). She also asserts state-law claims of disability discrimination, failure to accommodate, and reprisal under the Minnesota Human Rights Act, Minn. Stat. § 363A.01 et seq. (hereafter "MHRA").

## JURISDICTION AND VENUE

4. This Court has original jurisdiction to hear Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1332.

5. Venue is proper in this judicial district pursuant to 42 U.S.C. § 2000e-5(f)(3) (which provision the ADA incorporates by reference); all of Defendants' unlawful acts against Plaintiff occurred in Minnesota.

## BACKGROUND

6. North Homes hired Plaintiff in September 2017 as a full-time School-Based Mental Health Practitioner. During the academic year, Plaintiff provided daytime treatment services to children at Southwest School, located in Grand Rapids, Minnesota. When the students of Southwest School were on summer vacation, Plaintiff worked with children participating in North Homes' summer camp program.

7. During her employment, Plaintiff worked exclusively as a school-based practitioner with students at the Southwest School or with children at North Homes' summer camp.

8. North Homes completed two annual, comprehensive reviews of Plaintiff's performance--one covering September 2017 to April 2018, the other covering April 2018 to April 2019. In each of these reviews, it rated Plaintiff as being an exceptional employee who exceeded expectations.

9. In September 2018, Plaintiff began to have neurological problems, including sensitivity to light, headaches, and dizziness. Her medical provider believed these were symptoms of post-concussion syndrome. These neurological issues continued for six months, prompting Plaintiff to undergo further medical testing.

10. In early March 2019, Plaintiff's medical providers diagnosed her with a rare physiological-brain condition, Chiari Malformation I, a permanent disability. The physical manifestations of this permanent, episodic disability include: dizziness, weakness, loss of fine motor skills, and breathing problems. This disability also adversely impacts major bodily functions--such as proper functioning of neural pathways--and major bodily systems--such as Plaintiff's nervous system.

11. On or about March 12, 2019, Plaintiff disclosed her disability to Defendants. She also requested to use intermittent medical leave under the FMLA. She made this request for purposes of attending upcoming medical appointments and for dealing with periodic, unpredictable flare-ups of the disabling conditions brought on by her disability.

12. On or about March 15, 2019, just two or three days after first invoking her rights to intermittent leave, Plaintiff requested FMLA leave to attend pending medical appointments at the Mayo Clinic.

13. On March 21, 2019, Plaintiff informed North Homes that she would be undergoing medical treatment related to her disability and that she would be using FMLA-leave beginning on April 15th and continuing for up to two weeks.

14. On March 22, 2019, Plaintiff's medical provider informed North Homes that she would need to use medical leave on the 29th of March because she could not participate in certain training activities due to her disability and ongoing treatment.

15. On March 27, 2019, Plaintiff worked a full day for Defendant at Southwest School. That day, she informed her supervisor that her disability was causing her to have vision problems, dizziness, and headaches. She also told him that if these disabling conditions continued or worsened, she might have to use medical leave the following day.

16. On March 28, 2019, Plaintiff's medical condition had not improved; she was unable to work due to disabling conditions--i.e. vision problems, dizziness--attributable to her disability, a serious health condition; because of her inability to work, she used medical leave on the 28th of March.

17. On March 29th, Plaintiff was again absent due to a serious health condition--her disability and the disabling conditions of her disability.

18. On March 31, 2019, Plaintiff's supervisor approved her most-recent annual performance review (which evaluation he had first presented to Plaintiff on March 14, 2019). In this review, he confirmed that she had exceeded expectations across the board, including through her exceptionally good behavior, demeanor, and communications with co-workers and clients of North Homes--including the staff and students with whom she worked at Southwest School.

19. On April 1, 2019, Plaintiff was able to resume working and she reported for duty at Southwest School. Before her workday started, Plaintiff's supervisor called her and asked her to meet him at North Homes' headquarters. She left the worksite to meet with him as requested. Plaintiff's supervisor informed her that North Homes no longer had a job for her at Southwest School. Plaintiff was understandably in shock, and she asked her supervisor whether she had done anything wrong. He repeatedly assured her that the sudden decision to remove her from her school-based position had nothing to do with her performance. As he put it, the school was simply restructuring its program.

20. On April 1st, when North Homes told Plaintiff she could not resume working at Southwest School due to restructuring, it lied to her. There was no restructuring of the program at Southwest School. After April 1, 2019, North Homes continued employing less-qualified, non-disabled employees, at Southwest School, performing the same duties

Plaintiff had performed. These non-disabled comparators had not requested or used FMLA leave.

21. On April 4, 2019, after again informing Plaintiff that her school-based position had been eliminated due to "restructuring" and not because of performance problems, North Homes ordered Plaintiff to transfer into a new position. In this new role, she would be working as a Community-Based Mental Health Practitioner, providing services to children outside of a school-based setting in various locations--i.e. at different children's homes--and at various times--both day and evenings, during the week and potentially weekends. As part of this job, Plaintiff would also have to potentially drive with children in her car.

22. Plaintiff objected to this proposed transfer as being inconsistent with her disability-related limitations, and she requested that North Homes either reinstate her to her job at Southwest School or assign her to another vacant School-Based Mental Health Practitioner position. North Homes refused to allow Plaintiff to resume working in any school-based position, falsely claiming that no such jobs were available.

23. On April 4th, North Homes lied to Plaintiff when it told her there were no vacant school-based positions equivalent to the job she had performed at Southwest School. In fact, it had several openings for School-Based Mental Health Practitioners, a job which Plaintiff could certainly perform with her disability and related work restrictions. These

6

job vacancies, any of which Plaintiff could fulfill, continued to be open throughout April, May, and June of 2019.

24. On April 9, 2019, Plaintiff's medical provider informed North Homes that, despite her disability, Plaintiff could perform the duties of a School-Based Mental Health Practitioner (her old job). Plaintiff's doctor also informed North Homes that, due to her disability, Plaintiff could not safely perform the duties of a Community-Based Mental Health Practitioner (the new job North Homes sought to force her into). After receiving this information from Plaintiff's doctor, North Homes still refused to reinstate Plaintiff or place her into an equivalent, vacant, school-based position.

25. From April 15th to April 19th, Plaintiff was receiving medical care at Mayo Clinic due to her disability and serious health condition. On or about April 19th, she contacted her supervisor and informed him that she wanted to return to work on April 22nd; she was ready, willing, and able to resume working as School-Based Mental Health Practitioner.

26. On April 24, 2019, North Homes sent Plaintiff an email informing her that: (i) North Homes would not reinstate her into a school-based position; (ii) North Homes was revoking the unilateral transfer it had proposed (employment as a community-based practitioner); (ii) North Homes had no positions available which Plaintiff could perform with her disability-related restrictions; (iii) and, that North Homes would be forcing her onto continuous FMLA leave.

27. In this email, North Homes concocted another reason for why it had ended Plaintiff's position at Southwest School. After previously telling her it was due to a "restructuring" at the school, it now falsely claimed that it had removed her from working in a school-based setting "due to concerns and complaints" from "school officials."

28. North Homes' refusal to reinstate Plaintiff after she first requested and began using intermittent FMLA leave in March 2019, coupled with its decision to force her onto continuous FMLA leave in April 2019, caused her to unnecessarily exhaust her entire 12-week entitlement of FMLA leave.

29. In the latter part of June 2019, Plaintiff's doctor again informed North Homes that Plaintiff could perform all the essential functions of a School-Based Mental Health Practitioner. Plaintiff's doctor also, again, informed North Homes that, due to her disability, Plaintiff was not capable of transporting children or working nights and weekends, as required of the community-based practitioner position North Homes sought to forcibly transfer Plaintiff into.

30. As of July 18, 2019, because North Homes had failed to reinstate her, Plaintiff had exhausted her entire allotment of FMLA leave. That day, North Homes sent her a letter terminating her employment purportedly because she could not work as a community-based practitioner with the medical restrictions her disability imposed upon her, and North Homes would not reinstate her into a school-based practitioner position.

31. Since being diagnosed with Chiari Malformation I, Plaintiff has had a record of being "disabled" and she has lived with a "disability" (as defined by the ADA and the MHRA). This disability is a permanent condition that impairs at least one or more "major life activities" (as defined by the ADA), including but not limited to certain "major bodily functions" (as defined by the ADA), specifically neurological functions. Furthermore, Defendant regarded Plaintiff as being incapable of performing certain major life activities, such as working a full-time job with or without accommodations; thus, Plaintiff is a person Defendant "regarded" as being disabled.

32. Plaintiff is also a "qualified individual" (as defined by the ADA) and a "qualified disabled person" (as defined by the MHRA); despite her disability, she was and is able, with or without a reasonable accommodation, to perform all the essential functions of available employment with Defendant, including the job duties of a School-Based Mental Health Practitioner.

33. Within 300 days of the ADA violations of which she complains, and within 365 days of the MHRA violations of which she complains, Plaintiff filed a charge of discrimination with the Minnesota Department of Human Rights ("MDHR"), which charge was cross-filed with the Equal Employment Opportunity Commission ("EEOC"). On September 10, 2020, 2020, Plaintiff requested to withdraw her pending charge of

discrimination to pursue a private lawsuit against North Homes. She received received her right-to-sue letter one week later.

## COUNT I
## ADA DISABILITY DISCRIMINATION
## (42 U.S.C. § 12112)

34. Plaintiff re-alleges the foregoing paragraphs as if fully re-stated herein.

35. Because Plaintiff is disabled, North Homes unlawfully and intentionally discriminated against her with respect to the terms, conditions, privileges, and status of her employment.

36. North Homes terminated Plaintiff's employment because of her disability, even though she was qualified, with or without a reasonable accommodation, to fulfill the essential functions of her position.

37. Plaintiff requested intermittent medical leave and to be excused from certain non-essential training activities as reasonable accommodations. Prior to terminating Plaintiff' employment, North Homes failed to reasonably accommodate her disability, even though at least one reasonable accommodation was available to North Homes, and it would have presented no undue hardship to accommodate Plaintiff.

38. The actions of North Homes against Plaintiff, including but not limited to those described above, constituted discrimination in violation of the ADA.

39. North Homes perpetrated the unlawful discriminatory actions against Plaintiff, including but not limited to those described above, with malice or reckless disregard for her protected rights.

40. As a direct and proximate result of North Homes' unlawful acts of disability discrimination, Plaintiff has suffered and continues to suffer economic harm, lost earnings and benefits, embarrassment, damage to reputation, humiliation, emotional distress, and other compensatory damages in excess of $75,000.00.

## COUNT II
## ADA RETALIATION AND COERCION
## (42 U.S.C. § 12203)

41. Plaintiff re-alleges the foregoing paragraphs as if fully re-stated herein.

42. Plaintiff opposed acts of North Homes that she in good faith believed were violations of her rights under the ADA.  She also invoked the protections of the ADA and exercised her rights under the law, including by requesting reasonable accommodations. Because of her protected conduct, North Homes willfully and intentionally discriminated against her, retaliated against her, interfered with her rights, and subjected her to threats, intimidation, harassment, and coercion.

43. North Homes' willful acts of retaliation and coercion against Plaintiff included refusing to permit Plaintiff to resume working after she was diagnosed with a disability, for which she had requested accommodations, and terminating Plaintiff' employment. North Homes

took these adverse actions against her because of her protected conduct, not because of any legitimate business reasons.

44. The actions of North Homes against Plaintiff, including but not limited to those described above, constituted retaliation and coercion in violation of the ADA (42 U.S.C. § 12203).

45. As a direct and proximate result of North Homes' violation of the ADA, Plaintiff has suffered and continues to suffer economic harm, lost earnings and benefits, embarrassment, damage to reputation, humiliation, emotional distress, and other compensatory damages in excess of $75,000.00.

## COUNT III
## VIOLATION OF THE MHRA
## (Minn. Stat. § 363A.08, Subd. 2(2) and 2(3))

46. Plaintiff re-alleges the foregoing paragraphs as if fully re-stated herein.

47. North Homes terminated Plaintiff's employment because of her disability, even though she was qualified, with or without a reasonable accommodation, to fulfill the essential functions of her position.

48. North Homes' decision to terminate Plaintiff was not based on a "bona fide occupational qualification" as that term is used in the MHRA.

49. The actions of North Homes against Plaintiff, including but not limited to those described above, constituted an unfair discriminatory practice relating to employment in violation of the MHRA (Minn. Stat. §363A.08, Subd. 2(2) and 2(3)).

50. As a direct and proximate result of North Homes' unlawful acts of disability discrimination against her, Plaintiff has suffered and continues to suffer economic harm, lost earnings and benefits, embarrassment, damage to reputation, humiliation, emotional distress, and other compensatory damages in excess of $75,000.00.

51. Because North Homes' violations of Plaintiff's rights under the MHRA were willful, she is entitled to statutory punitive damages. She is also entitled to recover a doubling or tripling of her pecuniary damages. And, she is entitled to a recover civil penalty on behalf of the State of Minnesota against North Homes.

### COUNT IV
### VIOLATION OF THE MHRA
### (Minn. Stat. § 363A.08, Subd. 6)

52. Plaintiff re-alleges the foregoing paragraphs as if fully re-stated herein.

53. Prior to terminating Plaintiff' employment, North Homes failed to make a reasonable accommodation to her known disability, even though she was a qualified disabled person, at least one such reasonable accommodation was available to North Homes, and it would have presented no undue hardship to accommodate her disability.

54. The actions of North Homes against Plaintiff, including but not limited to those described above, constituted an unfair employment practice in violation of the MHRA (Minn. Stat. §363A.08, Subd. 6).

55. As a direct and proximate result of North Homes' unlawful failure to accommodate Plaintiff' disability, she has suffered and continues to suffer economic harm, lost earnings and benefits, embarrassment, damage to reputation, humiliation, emotional distress, and other compensatory damages in excess of $75,000.00.

56. Because North Homes' violations of Plaintiff's rights under the MHRA were willful, she is entitled to statutory punitive damages. She is also entitled to recover a doubling or tripling of pecuniary damages. And, she is entitled to recover a civil penalty on behalf of the State of Minnesota against North Homes.

## COUNT V
## UNLAWFUL REPRISAL—MHRA
## (Minn. Stat. § 363A.15)

57. Plaintiff re-alleges the foregoing paragraphs as if fully set forth herein.

58. During the course of Plaintiff' employment, North Homes unlawfully retaliated against her because she reported and opposed North Homes' unlawful and disparate treatment of her based upon her disability and her need for a reasonable accommodation.

59. Compared to employees who did not engage in such protected conduct, North Homes subjected Plaintiff to disparate treatment with respect to continued employment, advancement opportunities, and other rights, privileges, and conditions of employment.

60. The actions of North Homes against Plaintiff, including but not limited to those described above, constituted "reprisal" within the meaning of the MHRA; North Homes violated the MHRA's prohibition on reprisal and this violation culminated in Plaintiff' discharge from employment.

61. As a direct and proximate result of North Homes' unlawful acts of reprisal against her, Plaintiff has suffered and continues to suffer economic harm, loss of earnings and benefits, embarrassment, damage to reputation, humiliation, emotional distress, and other compensatory damages in excess of $75,000.00.

62. Because North Homes' violations of Plaintiff's rights under the MHRA were willful, she is entitled to statutory punitive damages. She is also entitled to recover a doubling or tripling of pecuniary damages. And, she is entitled to recover a civil penalty on behalf of the State of Minnesota against North Homes.

### COUNT VI
### FMLA ENTITLEMENT CLAIM
### (29 U.S.C. § 2615(a)(1))

63. Plaintiff re-alleges the foregoing paragraphs as if fully re-stated herein.

64. At all times relevant, Plaintiff was an "eligible employee" with a "serious health condition" entitled to job-protected medical leave and reinstatement under the FMLA.

65. At all times material to this Complaint, North Homes was a "covered entity" (as defined by the FMLA) continuously employing more than 50 persons.

66. Plaintiff availed herself of the right to use intermittent medical leave for a serious health condition, including on March 28-29 of 2019.

67. Following her use of FMLA leave, Plaintiff was entitled to reinstatement as a School-Based Mental Health Practitioner at Southwest School or placement into an equivalent vacant position for which she was qualified.

68. North Homes failed to reinstate Plaintiff into her position as a School-Based Mental Practitioner or to place her into an equivalent vacant position for which she was qualified.

69. As a direct and proximate result of North Homes' violation of Plaintiff's entitlement to be reinstated following use of intermittent leave, Plaintiff has suffered and continues to suffer economic harm, lost earnings and benefits, and other compensatory damages in excess of $75,000.00.

## COUNT VII
## FMLA RETALIATION
## (29 U.S.C. § 2615(a)(2))

70. Plaintiff re-alleges the foregoing paragraphs as if fully re-stated herein.

71. Plaintiff engaged in statutorily protected conduct by exercising her right to job-protected medical leave under the FMLA and seeking

reinstatement to her position as a School-Based Mental Health Practitioner.

72. North Homes unlawfully and willfully retaliated against Plaintiff, in ways that include the termination of her employment. Had Plaintiff not exercised her right to job-protected medical leave and reinstatement under the FMLA, North Homes would not have retaliated against her.

73. North Homes did not remove, re-assign, or terminate employees who were similarly situated to Plaintiff but who had not engaged in protected conduct under the FMLA.

74. As a direct and proximate result of North Homes' unlawful and willful retaliation against Plaintiff, which illegal actions were motivated by the exercise of her rights under the FMLA, Plaintiff has suffered and continues to suffer economic harm, lost earnings and benefits, and other compensatory damages in excess of $75,000.00.

## COUNT VIII
## FMLA DISCRIMINATION
## (29 U.S.C. § 2615(a)(1))

75. Plaintiff re-alleges the foregoing paragraphs as if fully re-stated herein.

76. Plaintiff engaged in statutorily protected conduct by exercising her right to job-protected medical leave under the FMLA and seeking reinstatement to her position as a School-Based Mental Health Practitioner.

77.. North Homes discriminated against Plaintiff because she used and sought to use intermittent leave under the FMLA. This discrimination included, removing Plaintiff from her school-based position and falsely claiming it was due to a "restructuring" or complaints about Plaintiff's performance; forcing Plaintiff to exhaust her FMLA leave by requiring her to take continuous leave when she had requested intermittent FMLA leave; refusing to permit Plaintiff to work as a school-based practitioner in a different vacant job position; and terminating Plaintiff's employment on the pretense that she had exhausted her FMLA leave and there were no open positions for which she was qualified.

78. Had Plaintiff not exercised her right to job-protected medical leave and reinstatement under the FMLA, North Homes would not have discriminated against her.

79. North Homes did not remove, re-assign, force onto extended leave, or terminate employees who were similarly situated to Plaintiff but who had not engaged in protected conduct under the FMLA.

80. As a direct and proximate result of North Homes's unlawful and willful retaliation against Plaintiff, which illegal actions were motivated by the exercise of her rights under the FMLA, Plaintiff has suffered and continues to suffer economic harm, lost earnings and benefits, and other compensatory damages in excess of $75,000.00.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays for entry of judgment and an order providing:

A. That the practices of North Homes complained of herein are adjudged, decreed and declared to violate the rights secured to Plaintiff by the ADA, the MHRA and the FMLA.

B. That North Homes is ordered to pay a civil penalty under the MHRA and mandated to adopt practices in conformity with the requirements of the ADA, the MHRA and the FMLA.

C. That Plaintiff is reinstated with full back-pay and/or awarded compensatory damages, including front-pay and other allowable damages in an amount to be established at trial.

D. That Plaintiff is awarded liquidated damages as required under the FMLA.

E. That North Homes pays legal counsel for Plaintiff their reasonable attorneys' fees and the costs and expenses of this action.

F. That Plaintiff is awarded such other and further legal and equitable relief as may be found appropriate, just and/or equitable, including liquidated damages, punitive damages and a multiplier of damages as permitted under applicable law.

                                        **MULLER & MULLER, PLLC**

Date:  October 21, 2020          /s/ Andrew Phillips Muller
                                            Andrew P. Muller (No. 32467X)
                                            310 Fourth Avenue South
                                            Suite 5010
                                            Minneapolis, MN 55410-2102
                                            (612) 604-5341
                                            apmuller@themullerlawfirm.com

                                        **JOHN A. KLASSEN, PA**

                                            John A. Klassen (No. 24434X)
                                            310 Fourth Avenue South
                                            Suite 5010
                                            Minneapolis, MN 55415
                                            (612) 204-4533
                                            john@jaklaw.com

                                        **ATTORNEYS FOR PLAINTIFF**